## Jones v. Commonwealth.

(Decided March 2, 1926.)

## Appeal from Pike Circuit Court.

1. Criminal Law—Words, "to the Exclusion of a Reasonable Doubt," in Defensive Instruction are Prejudicial Error.—In defensive instruction, jury are only required to believe facts on which instruction is based, and words, "to the exclusion of a reasonable doubt," in such instruction, are prejudicial error.

2. Homicide—Failure to Define "Gross Negligence," "Reckless," and "Wanton," in Instructions on Voluntary and Involuntary Manslaughter and Accidental Homicide, is Error.—In prosecution for running over child with automobile, causing its death, failure of court to define words "gross negligence," "reckless," and "wanton," used in instructions on voluntary and involuntary manslaughter and accidental homicide, was error.

3. Automobiles—Failure to Instruct on Murder Held Proper, where there was no Malice or Intentional Killing of Child by Automobile.—In prosecution for running over child with automobile, causing its death, it was proper not to instruct on murder, where there was no intimation of malice or intentional homicide.

4. Homicide—"Voluntary Manslaughter" Requires Homicide to be Willfully and Intentionally or Recklessly and Wantonly Committed.—"Voluntary manslaughter" requires homicide to be willfully and intentionally committed, or committed so recklessly and wantonly as to be felonious, though not intended.

5. Homicide—Homicide Committed by Wanton, Reckless, or Criminally Careless Handling of Firearms is Voluntary Manslaughter, Though there is no Intention to Kill.—Homicide committed by wanton, reckless, or criminally careless handling or discharging of firearms, in method the user knows to be dangerous to human life, is voluntary manslaughter, though there is no intention to kill.

6. Automobiles—Automobile Driver Charged with Natural and Reasonable Consequences of Conduct.—Automobiles are not to be classed with deadly weapons, but, if improperly handled, they are dangerous instrumentalities, and driver is charged with natural and reasonable consequences of his conduct.

7. Automobiles—Killing by Operating Automobile in Manner Reasonably Calculated to Injure is Voluntary Manslaughter.—One operating automobile in manner reasonably calculated to injure others using highway, and thereby recklessly, wantonly, and with gross negligence striking and killing another, is guilty of voluntary manslaughter.

8. Homicide—Killing of Another in Doing an Unlawful Act, Not a Felony, and Not Endangering Human Life, or While Doing a Law-

ful Act in Unlawful Manner, is "Involuntary Manslaughter."— "Involuntary manslaughter" is killing of another in doing some unlawful act, not amounting to a felony, and not likely to endanger human life, or in killing another while doing a lawful act in an unlawful manner; there being an absence of intention to kill in each instance.

9. Homicide.—Words "gross negligence," used in defining voluntary manslaughter, are equivalent to words "reckless and wanton."

10. Homicide—Gross Negligence Required to Make Killing while Performing a Lawful Act Involuntary Manslaughter.—To constitute involuntary manslaughter at common law, a person killing another while engaged in performance of a lawful act must be guilty of gross negligence.

11. Automobiles—Proper Instruction on Meaning of Words "Reckless," "Wanton," "Carelessly" and "Negligently," and "Ordinary Care" Stated in Prosecution for Killing with Automobile.—In prosecution for running over child with automobile, causing its death, proper instruction on meaning of words "reckless," "wanton," "carelessly" and "negligently," and "ordinary care" stated.

12. Automobiles—Proper Instructions on Voluntary and Involuntary Manslaughter and Accidental Homicide in Operating Automobile Stated.—In prosecution for running over child with automobile causing its death, proper instructions on voluntary and involuntary manslaughter and accidental homicide stated.

13. Automobiles—Proper Instruction as to Disposition of Case, if Jury has Reasonable Doubt of Guilt or Degree of Automobile Driver's Guilt, Stated.—In prosecution for running over child with automobile, causing its death, proper instruction as to disposition of case, if jury has reasonable doubt of guilt or degree of guilt, stated.

14. Automobiles—Evidence as to Number of Children on Pavement Held Incompetent in Prosecution for Killing Child by Automobile, but Evidence as to Use of Place Generally Competent.—In prosecution for running over child with automobile, causing its death, evidence of number of children on pavement and not near decedent is incompetent, but evidence that place is generally used by number of children at particular hour of day is competent.

15. Criminal Law—Remarks of Prosecutor Describing Defendant and His Witnesses as Bootleggers and Liars Held Reversible Error, and Not Cured by Instruction to Consider Only Law and Facts.— In prosecution for running over child with automobile causing its death, remarks of prosecutor, dehors the record, describing defendant and his witnesses as bootleggers and liars, was reversible error, which was not cured by instruction to consider only the law and facts.

DAUGHERTY & BARRETT for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge McCandless—Reversing.

Talmage Jones was convicted of the crime of manslaughter and on this appeal urges numerous grounds for reversal. The facts are: A public school building is situated on Seventh street, in Pikeville, about three blocks from Cline street. School had closed for the afternoon, and some fifty or sixty children were walking along the pavement; Della Smallwood and her sister being considerably in advance of the others. These two children had moved to town from the country three or four days before and were not familiar with street traffic. Della started across Seventh street at its intersection with Cline and it appears had turned and was going back at the time she was struck. A merchant who was just inside a store door on the opposite side of the street testifies that appellant drove his car up Cline street and turned rapidly into Seventh; he saw the little girl waver in front of it and start backward; the passing machine obscured his vision and he did not see her at the time she was struck. He ran over to where she was, but in the meantime her sister had dragged her to the curb. The machine was running rapidly but was stopped, and appellant returned and assisted in carrying the child to the hospital. He located the place the machine stopped and measured the distance between where the child lay and where the machine was stopped, this being forty feet.

Another witness who was engaged in flagging at a street crossing testifies that the machine turned in Seventh street, going at the rate of thirty miles per hour and when it struck the child the impact threw her several feet in the direction the machine was going; that the driver was unable to stop the machine until it had run forty feet. The child was mortally wounded and died later.

On the other hand, defendant testifies that he is a traveling salesman; that he had been on lower Cline street to visit a customer, being accompanied by a friend. On their return, as they approached the Seventh street intersection, they met a car not under control coming down the center of the street; there were cars parked on each side of the street, and this required him to stop his car behind the one on the right-hand side, which he did, stopping within twenty feet of the street intersection.

After the car had passed he started his machine slowly, turning around the intersection at not exceeding ten miles per hour. Seventh street is about twenty-five feet in width; before he reached the intersection the little girl ran in front of his car; he was making a left-hand turn and the little girl was safe before she turned and ran back; when she did this he swerved his car as far as he could to the left; he was unable to tell whether he struck her or not, and asked his companion if he did and the latter replied, "Yes, you have hit her." He stopped at once within a few feet of the collision and went back and picked her up. In this he is corroborated by his companion, and as to stopping his car on Cline street to let a passing car by he is corroborated by the occupants of that vehicle. The defense also shows that the flagman who testified for the Commonwealth was watching at the time for the passing of a street car over the railroad tracks, and insists that his attention was devoted mostly to that duty, and that he could not have observed all of the facts detailed by him. There were other witnesses, but their testimony is relatively unimportant, except to the extent of showing the proximity of the schoolhouse and the general use of the pavements by the school children at that time in the afternoon.

The court instructed the jury on voluntary and involuntary manslaughter and accidental homicide. It is urged that the court erred in not defining the words "gross negligence," "reckless" and "wanton" as used in the instructions and in requiring the jury to believe from the evidence "to the exclusion of a reasonable doubt" the facts relied upon by defendant as constituting accidental homicide. Clearly in defensive instructions the jury are only required to believe the facts upon which the instruction is based, and are not required to believe such facts *to the exclusion of a reasonable doubt,* and it is prejudicial error to incorporate these words in such an instruction. Lee v. Com., 210 Ky. 410. Also in view of the difficulty of distinguishing between the facts constituting voluntary and involuntary manslaughter in cases of this character, we think the court should define the terms used in the instruction, and that it is error not to do so. Rowe v. Com., 206 Ky. 803. Otherwise the instructions are rather prolix, perhaps confusing, and as the case must be reversed for other reasons, it is deemed advisable to indicate such as should be given on another trial, if the evidence is substantially the same

as here.  No instruction was given on murder; this was proper, as there is no intimation of malice, indeed, none of an intentional homicide.  To constitute voluntary manslaughter "it is essential  .  .  .  that the homicide should have been willfully and intentionally committed, or be committed under such circumstances as to strike one at firsh blush as so reckless and wanton as to be felonious though apparently not intended by the perpetrator.  The entire criminal law is pervaded by this doctrine. Montgomery v. Com., 26 L. R. 358. Cited with approval in Com. v. Saylor, 156 Ky. 249; Rowe v. Com., 206 Ky. 803.

As applied to firearms and deadly weapons, it is uniformly held that a homicide committed by the wanton, reckless or criminally careless handling or discharging of firearms in a way the user knows to be dangerous to human life, is voluntary manslaughter, although the user has no intention to kill.  Terrill v. Com., 191 Ky. 608; Landon v. Com., 195 Ky. 87; Davis v. Com., 193 Ky. 597.  Automobiles may rightfully and properly be used upon the public highways, and are not to be classed in the same category with deadly weapons, but if improperly handled they are dangerous instrumentalities and the driver should be charged with the natural and reasonable consequences of his conduct.  If he operates such vehicle upon the highway in a manner that he knows or has reasonable grounds to believe is reasonably calculated to injure others using the highway, and under such circumstances recklessly, wantonly and with gross carelessness strikes and kills another, this constitutes voluntary manslaughter.

Involuntary manslaughter is the killing of another in doing some unlawful act not amounting to a felony, and not likely to endanger human life, or in killing another while doing a lawful act in an unlawful manner, there being an absence of an intention to kill in each instance.  Clem v. Com., 198 Ky. 486; Maulding v. Com., 172 Ky. 371; Held v. Com., 183 Ky. 209.

The words "gross carelessness" as generally used in the definition of voluntary manslaughter are practically equivalent to the words "reckless" and "wanton." Also to constitute involuntary manslaughter at common law, a person who kills another while engaged in the performance of a lawful act, must be guilty of gross negligence, and in the Held case *supra,* it was decided that a failure to exercise ordinary care in driving an

automobile upon the crowded streets of a city under circumstances similar to those described in this case, is in itself gross negligence. In view of the similarity mentioned and in order to avoid tautology and confusion in definitions, we feel it well to omit the words "gross carelessness" and suggest that instructions be given in substantially the following form:

Instruction No. 1. As used in these instructions, the words "reckless" and "wanton" mean utterly careless; having no regard for consequences or for the safety of others, yet without malice. The words "carelessly" and "negligently" mean the absence of ordinary care, and "ordinary care" means such care as an ordinarily prudent person would exercise for his own protection under circumstances similar to those described in this case.

Instruction No. 2. If the jury believe from the evidence to the exclusion of a reasonable doubt that in Pike county, before the finding of this indictment, the defendant, Talmage Jones, operated an automobile upon the streets of Pikeville in a manner reasonably calculated to endanger the lives of persons then and there on such streets, and that he knew this or had reasonable grounds so to believe, and that at said time and place and while so doing, if he did so, the defendant recklessly or wantonly ran said machine against Della Smallwood, and knocked or forced her to the surface of the street, thereby inflicting injuries upon her person from which she then and there died, you should find him guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for not less than two nor more than twenty-one years.

Instruction No. 3. Although the jury may not believe from the evidence to the exclusion of a reasonable doubt that the defendant recklessly or wantonly run his machine against or upon deceased, as predicated in the second instruction, yet if they further believe from the evidence, to the exclusion of a reasonable doubt, that at the time and place described in the first instruction, and within twelve months before the finding of this indictment, the defendant carelessly and negligently ran his machine upon or against Della Smallwood, and thereby produced injuries from which she then and there died; or that at said time and place he operated his car upon the streets of the city of Pikeville at a speed greater than is reasonable and proper, having due regard to the traffic and use of the highway, or so as to endanger the

life or limbs, or injure the property of any person, and that while so driving, if he did so, his auto struck Della Smallwood, knocking her to the street, thereby inflicting injuries upon her person from which she then and there died, then in either of above events, they should find him guilty of involuntary manslaughter, and fix his punishment at a fine in any sum or at imprisonment in the county jail for any period, or they may both so fine and imprison him.

Instruction No. 4. If the jury believe from the evidence that the killing of Della Smallwood, referred to in the indictment and instructions herein, resulted from an accident, occurring otherwise than as set forth in instructions two and three, then they will find the defendant not guilty.

Instruction No. 5. If the jury find the defendant guilty, but entertain a reasonable doubt as to the degree of his guilt, they will find him guilty of the lesser offense, to wit: involuntary manslaughter. And if upon the whole case they have a reasonable doubt as to the defendant having been proven guilty, they should find him not guilty.

An objection was made to certain evidence tending to show a number of children on the pavement. None of the others were close to the two little girls at the time of the accident, and on another trial this evidence will be omitted, though if it is a fact that at this hour in the afternoon the street at this place was generally used by numbers of children, such evidence is competent.

A ground urged for reversal and which of itself would have been sufficient for that purpose was misconduct of counsel for the Commonwealth in his closing argument; that official apparently lost all self-control, and while announcing to the jury that it would be improper for him in the absence of impeaching testimony to describe the character of the witnesses as he knew them, proceeded to refer to them thus: "Not one of them has sworn the truth for 15 years; they lay around pool rooms, smoke cigarettes, drink whiskey and you may send one of them before the grand jury, and not one word of truth will they tell. . . . John Mullins is the biggest bootlegger in this country and won't swear one word of truth. . . . If you believe a person charged with an awful crime like this, and with his host of bootleggers and lie-swearers that he associates with and brings into court to testify in his behalf, you can

never convict a person in the world." Other remarks *dehors* the record were equally improper, being too long for quotation. The circuit judge was absent and an attorney presided by the consent of parties; defendant objected to the remarks, but the *pro tem.* judge knew nothing of the facts and admonished the jury to consider only the law and facts introduced before them. This was no protection for the defendant and in itself authorized a new trial. It is to be regretted that the prosecuting attorney wandered so far afield. Whether through lack of knowledge or through reckless indifference to the duties of his office, his conduct calls for a sharp reprimand. This court has so frequently condemned this practice that every official in the state should be familiar with its ruling, citation of authorities being superfluous.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.